LUIS A. AYON, ESQ.
Nevada Bar No. 9752
MARGARET E. SCHMIDT, ESQ.
Nevada Bar No. 12489
**MAIER GUTIERREZ AYON**
400 South Seventh Street, Suite 400
Las Vegas, Nevada 89101
Telephone: (702) 629-7900
Facsimile: (702) 629-7925
E-mail:    laa@mgalaw.com
           mes@mgalaw.com

*Attorneys for Plaintiff/Counter-Defendant
Vern Elmer*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| VERN ELMER, an individual, | Case No.: 2:14-cv-01999-GMN-NJK |
| Plaintiff, | **VERN ELMER'S OPPOSITION TO FREDDIE MAC AND FHFA'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| JP MORGAN CHASE BANK NATIONAL ASSOCIATION, a National Association; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Foreign Corporation; MTC FINANCIAL, INC., a Foreign Corporation; FEDERAL HOME LOAN MORTGAGE CORPORATION, a Foreign Corporation; ROBERT WAKEFIELD, an individual; DOES I through X; and ROE CORPORATIONS I through X, inclusive, | |
| Defendants. | |
| and | |
| FEDERAL HOUSING FINANCE AGENCY, as Conservator for the Federal Home Loan Mortgage Corporation, | |
| Intervenor. | |
| JP MORGAN CHASE BANK NATIONAL ASSOCIATION, a National Association; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Foreign Corporation; MTC FINANCIAL, INC., a Foreign Corporation; and FEDERAL HOME | |

1

|||
|---|---|
| 1 | LOAN MORTGAGE CORPORATION, a Foreign Corporation, |
| 2 | |
| 3 | Counterclaimants, |
| 4 | and |
| 5 | FEDERAL HOUSING FINANCE AGENCY, as Conservator for the Federal Home Loan Mortgage Corporation, |
| 6 | |
| 7 | Intervenor. |
| 8 | vs. |
| 9 | VERN ELMER; and SUNRISE RIDGE MASTER HOMEOWNERS ASSOCIATION, |
| 10 | Counter-Defendants. |

Plaintiff/counter-defendant Vern Elmer ("Plaintiff"), by and through its attorneys of record, the law firm of MAIER GUTIERREZ AYON, hereby files this opposition to defendant/counterclaimant Federal Home Loan Mortgage Corporation ("Freddie Mac") and intervenor Federal Housing Finance Agency's ("FHFA") (collectively "Defendants") motion for summary judgment (the "Motion") [Dkt. No. 57].

This opposition is made and based upon the following memorandum of points and authorities, the pleadings and papers on file herein, the exhibits attached hereto, and any oral argument of counsel to be made at the time of the hearing.

DATED this 23rd day of March, 2015.

Respectfully submitted,

**MAIER GUTIERREZ AYON**

___/s/ Margaret E. Schmidt_____
LUIS AYON, ESQ.
Nevada Bar No. 9752
MARGARET E. SCHMIDT, ESQ.
Nevada Bar No. 12489
400 South Seventh Street, Suite 400
Las Vegas, Nevada 89101
*Attorneys for Plaintiff/Counter-Defendant Vern Elmer*

2

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.     INTRODUCTION

This lawsuit involves title to real property in which the central issue before this Court is whether the NRS 116 foreclosure sale conducted over two years ago extinguished the first deed of trust recorded against the subject property. Relying entirely on the provisions of 12 U.S.C. § 4617(j)(3) that "[n]o property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the Agency", Defendants' Motion seeks judgment in its favor and an order from this Court that Freddie Mac's interests were not extinguished. However, Freddie Mac's alleged interest in the property was not recorded until over a year after the association's foreclosure sale, thus the notion that FHFA was required to give "consent" to the association's foreclosure sale is an implausible application of the statute and counterintuitive to principles of equity and fairness. Indeed, not only is § 4617(j)(3) misapplied in this context, but FHFA's invocation of § 4617(j)(3) is a violation of procedural due process and exceeds FHFA's statutory powers. Therefore, based on the arguments set forth herein, Plaintiff requests that Defendants' Motion be denied in its entirety.

### II.     FACTUAL AND PROCEDURAL HISTORY

**A.     STATEMENT OF UNDISPUTED FACTS**

1. This litigation involves the real property located at 6359 Pronghorn Ridge Avenue, Las Vegas, Nevada 89122, and bearing Assessor's Parcel Number 161-15-712-128 (the "Property").

2. The Property is located within a common-interest community, which is governed by NRS Chapter 116 and subject to the declaration of covenants, conditions, and restrictions ("CC&Rs") recorded by the Sunrise Ridge Master Homeowners Association (the "Association") on May 18, 2004. *See* **Exhibit 1**, CC&Rs.

3. Recording of the CC&Rs constituted record notice and perfection of the Association's lien for delinquent assessments (the "Association Lien"). *See* NRS 116.3116(5) ("Recording of the declaration constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment under this section is required.")

3

1    4.    On September 2, 2005, Scott Davis and Karen Davis (the "Davises") acquired ownership of the Property. *See* **Exhibit 2**, Grant, Bargain, Sale Deed.

5.    Thereafter, on September 1, 2005, the Davises entered into a loan agreement with The Mortgage House, Inc. ("Mortgage House") in the amount of $248,000.00. The deed of trust securing the loan was recorded against the Property on or about September 2, 2005 as Instrument No. 20050902-0003707 (the "Deed of Trust"). *See* **Exhibit 3**, Deed of Trust.

6.    Mortgage Electronic Registration Systems, Inc. ("MERS") was designated as the beneficiary of the Deed of Trust and T.D. Services Co. ("TDSC") was designated as trustee. *Id*.

7.    On January 11, 2011, a notice of breach and default and of election to cause sale of real property under deed of trust was recorded by MTC Financial dba Trustee Corps ("Trustee Corps"), which directed inquiries to JP Morgan Chase, N.A. ("Chase"). *See* **Exhibit 4**, Notice of Default.

8.    Following the Davises' failure to pay HOA assessments, Nevada Association Services ("NAS"), as agent for the Association, recorded a notice of delinquent assessment lien on December 29, 2011, which provided that the Association Lien contained delinquent HOA assessments incurred immediately preceding this initial action to enforce the Lien. *See* **Exhibit 5**, Notice of Delinquent Assessment Lien.

9.    On February 23, 2012, NAS recorded a notice of default and election to sell after the delinquent assessments owed under the Association Lien went unpaid. *See* **Exhibit 6**, Notice of Default under Delinquent Assessment Lien.

10.    On July 9, 2012, a notice of foreclosure sale was recorded by NAS, which stated that NAS would sell the Property at public auction to satisfy the indebtedness secured by the Association Lien in the amount of $3,372.72 as of the time of the initial publication of sale. *See* **Exhibit 7**, Notice of Foreclosure Sale.

11.    Thereafter, the Property was sold at public auction by NAS on November 16, 2012 (the "Association Foreclosure Sale") and Plaintiff took title in the Property via a foreclosure deed recorded on November 27, 2012 as Instrument No. 201211270001936 (the "Deed"). *See* **Exhibit 8**, Deed.

12. Pursuant to the Deed, Plaintiff was the highest bidder at the Association Foreclosure Sale and tendered payment to NAS for $4,185.00 in "satisfaction, pro tanto, of the obligations then secured by the Delinquent Assessment Lien." *Id.*

13. Furthermore, the Deed states that NAS "has complied with all requirements of law including, but not limited to, the elapsing of 90 days, mailing of copies of Notice of Delinquent Assessment and Notice of Default and the posting and publication of the Notice of Sale." *Id*.

14. On March 26, 2013, an assignment was recorded, purporting to transfer MERS' beneficial interest under the Deed of Trust to Chase. *See* **Exhibit 9**, Assignment of Deed of Trust.

15. A substitution of trustee was recorded on May 13, 2013, wherein Chase substituted Trustee Corps for TDSC. *See* **Exhibit 10**, Substitution of Trustee. Notably, Chase and Trustee Corps recorded the notice of default over two years prior to assignment and substitution. *See* Ex. 4.

16. On August 16, 2013, another notice of breach and default and of election to cause sale of real property under deed of trust was recorded by Trustee Corps, which stated that default occurred on June 1, 2010 and that. *See* **Exhibit 11**, Notice of Default.

17. Pursuant to the affidavit of Chase's Vice President attached to this notice, as of August 16, 2013, Chase was the current beneficiary of the Deed of Trust and only one assignment of the deed of trust had occurred. *Id*.

18. On October 8, 2013, a notice of rescission was recorded by Trustee Corps whereby Chase and Trustee Corps withdrew the notice of default recorded on January 11, 2011. *See* **Exhibit 12**, Notice of Rescission.

19. A notice of trustee's sale was recorded by Trustee Corps on December 17, 2013 stating that the Property would be sold at public auction on January 17, 2014. *See* **Exhibit 13**, Notice of Trustee's Sale.

20. On January 17, 2014, the Property was sold by Trustee Corps to Freddie Mac for $157,500.00. *See* **Exhibit 14**, Trustee's Deed Upon Sale.

21.     Freddie Mac's deed memorializing said sale was not recorded until March 18, 2014 – two months after the foreclosure sale.[1]  *Id.*

22.     An assignment of deed of trust was recorded on March 18, 2014 as well, purporting to transfer Chase's interest under the Deed of Trust to Freddie Mac, and claiming that the date of such assignment was March 10, 2014.  *See* **Exhibit 15**, Assignment of Deed of Trust.

23.     On October 21, 2014, Plaintiff filed a complaint in the Eighth Judicial District Court against Chase, MERS, Trustee Corps, Freddie Mac, and the Davises.  Dkt. No. 1 at Ex. A.  The complaint alleged claims for wrongful foreclosure, quiet title, slander of title, and injunctive relief.  *Id*.  On December 2, 2014, Trustee Corps removed the case to this Court.  *See id*.

24.     FHFA filed it motion to intervene as conservator for Freddie Mac on December 29, 2014 [Dkt. No. 21], which was granted by the Court on January 16, 2015 [Dkt. No. 36].

**B.    DISPUTED FACTS**

The date that Freddie Mac acquired its interest in the Deed of Trust is disputed, if any such interest ever existed.  Defendants claim that Freddie Mac acquired an interest in the Deed of Trust on October 24, 2005.  *See* Mot. at p. 4, ¶ 2.  However, the assignment recorded on March 18, 2014 states that Chase's beneficial interest under the Deed of Trust was not transferred to Freddie Mac until March 10, 2014.  *See* Ex. 15.  Moreover, pursuant to the affidavit of Chase's Vice President attached to the notice of default recorded on August 16, 2013, Chase was the current beneficiary of the Deed of Trust and only one assignment of the deed of trust had occurred at that point.  *See* Ex. 11.

### III.    LEGAL ARGUMENT

**A.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

The Federal Rules of Civil Procedure provide that entry of summary judgment is only proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[1] Pursuant to NRS 107.080(9), a trustee's deed upon sale must be recorded within thirty (30) days after the sale.  If the successful bidder fails to record the trustee's deed upon sale within thirty days, it is liable for damages caused by the failure to comply as well as attorney's fees and costs.  *See* NRS 107.080(10).  Consistent with Defendants' lack of compliance with the laws of this State, Freddie Mac's deed was not recorded until two months after the sale.

6

1 entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, the moving party has the
2 initial burden of demonstrating the absence of a genuine issue of material fact, which is only
3 discharged through the submission of admissible evidence, including the "pleadings, depositions,
4 answers to interrogatories, and admissions on file." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324
5 (1986); *see also Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). "If a moving party fails to
6 carry its initial burden of production, the nonmoving party has no obligation to produce anything,
7 even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire &*
8 *Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000) (citing *Adickes v.*
9 *S.H. Kress & Co.,* 398 U.S. 144, 160 (1970)).

10 If the movant's burden is met, in order to survive a Rule 56 motion, the plaintiff "need only
11 present evidence from which a jury might return a verdict in his favor. If he does so, there is a
12 genuine issue of fact that requires a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106
13 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986). As required on a motion for summary judgment, the
14 facts are construed "in the light most favorable to the party opposing the motion." *Matsushita Elec.*
15 *Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Moreover, "at the summary judgment
16 stage the judge's function is not himself to weigh the evidence and determine the truth of the matter
17 but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Further, the
18 Court may not make credibility determinations or draw inferences from the facts, as this is the
19 function of a jury, not that of a judge. *Id*. at 255; *see also Musick*, 913 F.2d at 1394. "The evidence
20 of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."
21 *Anderson*, 477 U.S. at 255.

22 **B. FREDDIE MAC'S INTEREST IN THE PROPERTY WAS NOT RECORDED UNTIL AFTER THE**
23 **HOA FORECLOSURE SALE AND AFTER PLAINTIFF ACQUIRED OWNERSHIP**

24 Defendants claim that because FHFA, as conservator to Freddie Mac, did not approve the
25 Association Foreclosure Sale, the Deed of Trust was not extinguished and Plaintiff purchased the
26 Property subject to Freddie Mac's security interest. *See generally*, Mot. at p. 4.

27 However, Defendants entirely omit how the Association (or anyone for that matter) would
28 have known of the alleged transfer to Freddie Mac and therefore how it would have been possible to

7

request such permission. Defendants claim that Freddie Mac acquired a first priority security interest of the Property on October 24, 2005 (Mot. at p. 4, ¶ 2); however, the assignment recorded on March 18, 2014, states that Chase's beneficial interest under the Deed of Trust was not assigned to Freddie Mac until March 10, 2014. *See* Ex. 15. Accordingly, notice of Freddie Mac's alleged interest was not recorded until over a year after the Association Foreclosure Sale on November 16, 2012. Moreover, pursuant to the affidavit of Chase's Vice President, Chase was the current beneficiary of the Deed of Trust as of August 16, 2013, and only one assignment of the deed of trust had occurred at that point. *See* Ex. 11. Indeed, Defendants have not set forth any evidence that the Association was ever notified of Freddie Mac's purported interest prior to the foreclosure.

Pursuant to the Supreme Court, in conducting a foreclosure sale, one is not required "to engage in impracticable and extended searches,"[2] or to make "extraordinary efforts to discover the identity and whereabouts of a mortgagee whose identity is not in the public record." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798, fn 4 (1983). As such, Defendants' arguments defy all notions of practicality and logic, by erroneously assuming that the Association should have just known about Freddie Mac's alleged interest in the Deed of Trust.

Moreover, a purchaser for value without notice of a superior or competing interest is protected from such claims under Nevada's bona fide purchaser doctrine. *See Gruber v. Baker*, 20 Nev. 453, 23 P. 858, 859 (1890) ("Where a deed intended as security is recorded, the defeasance not being recorded, a purchaser for value from the grantee, without notice of the defeasance, will hold an

---

[2]*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950):

> We recognize the practical difficulties and costs that would be attendant on frequent investigations into the status of great numbers of beneficiaries, many of whose interests in the common fund are so remote as to be ephemeral; and we have no doubt that such impracticable and extended searches are not required in the name of due process. The expense of keeping informed from day to day of substitutions among even current income beneficiaries and presumptive remaindermen, to say nothing of the far greater number of contingent beneficiaries, would impose a severe burden on the plan, and would likely dissipate its advantages … Accordingly we overrule appellant's constitutional objections to published notice insofar as they are urged on behalf of any beneficiaries whose interests or addresses are unknown to the trustee.

8

absolute title as against the grantor and his grantees. It is an absolute deed as regards third persons, and a bona fide purchaser will take the land discharged of the equity of redemption of the mortgagor."). Pursuant to NRS 111.325:

> Every conveyance of real property within this State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real property, or any portion thereof, where his or her own conveyance shall be first duly recorded.

NRS 111.325.

Here, Freddie Mac waited to record its assignment until over eight years after the Deed of Trust was allegedly purchased by Freddie Mac and over a year after Plaintiff purchased the Property for value.  Then, after Plaintiff paid off the Association Lien, the Property was taken by Defendants claiming to possess a superior interest in the Property and alleging that Plaintiff can have no claim to the Property pursuant to their unrecorded interest.  This result appears fundamentally unfair to Plaintiff, as a bona fide purchaser, who was never notified of any alleged claim by Freddie Mac, and who paid off the assessments that the beneficiary failed to pay despite having notice of the unpaid assessments and failing to protect its interests.  This result would achieve the outcome of actually rewarding inaction on the part of Defendants.  As Defendants cannot show that their interest was actually acquired and noticed prior to the Association Foreclosure Sale, their Motion, in its entirety, must be denied.

## C. DEFENDANTS' INVOCATION OF 12 U.S.C. § 4617 IS A DEPRIVATION OF PLAINTIFF'S PROPERTY RIGHTS WITHOUT DUE PROCESS OF LAW

Even if Freddie Mac did possess a security interest in the Property prior to the Association Foreclosure Sale, Defendants' reliance on 12 USC § 4617(j)(3) to support summary judgment in its favor, results in a violation of Plaintiff's due process rights.  Pursuant to the Fifth Amendment of the United States Constitution, the federal government is prohibited from depriving a person of his or her property without due process of law.  *See* U.S. CONST. amend. V.  "[T]he prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference." *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972).

9

Here, FHFA, in its capacity as a federally appointed conservator to Freddie Mac, is a government actor that has deprived Plaintiff of its property rights without due process of law. As such, granting judgment in its favor on Plaintiff's claims is prohibited under principals of constitutional due process.

### 1. **FHFA is a Government Actor**

First and foremost, in order for due process to be implicated, there must be a government actor. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). "As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments.'" *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 (1982) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978)).

A government action may be found if "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood*, 531 U.S. at 295 (quoting *Jackson v. Metro. Edison Co*., 419 U.S. 345, 351 (1974)). Alternatively, a government action may be found if the state has "so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity…." *Gorenc v. Salt River Project Agr. Imp. & Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989) (quoting *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725 (1961). Moreover, in order to attribute the conduct to the government: (1) the property deprivation must be caused by the exercise of a government-created right or authority; and (2) the avowedly private entity must have acted with a government official who provided overt and significant assistance. *Lugar v. Edmondson Oil Co., Inc*., 457 U.S. 922, 937 (1982).

In this case, the first element is satisfied because Plaintiff's property deprivation was caused by FHFA's invocation of 4617(j)(3), a government-created statutory authority. This authority is used to promote what FHFA's "central duty assigned it by Congress; *i.e.* to preserve and conserve the assets of [Freddie Mac] while in Conservatorship." Mot. at p. 13 (citing 12 U.S.C. § 4617(b)(2)(D). As for the second prong, when FHFA acts to preserve and conserve, it does so with at least two government officials, both of whom give overt and significant assistance to FHFA.

10

1   FHFA's General Counsel is Alfred M. Pollard, who has held that position since FHFA's
2   inception. *See* Decl. of Alfred M. Pollard, attached to Defendants' Mot. at Ex. A, ¶1. When FHFA
3   acts to preserve and conserve Freddie Mac's assets – as it allegedly did here – Mr. Pollard provides
4   overt and significant assistance. For instance, Mr. Pollard is part of a team within FHFA that
5   assesses how various externalities will impact Fannie's assets. *See* **Exhibit 16**, Decl. of Alfred M.
6   Pollard, dated Sept. 14, 2011, at p. 2:9; **Exhibit 17**, Decl. of Alfred M. Pollard, dated Feb. 22, 2011,
7   at p. 8, ¶¶19-20. He offers legal and policy advice to FHFA concerning how it can preserve and
8   conserve Fannie's interests. *See* **Exhibit 18**, Decl. of Alfred M. Pollard, dated June 24, 2014, at ¶ 7.
9   Mr. Pollard conducts an "exhaustive process" to understand whether state initiatives coincide with
10  the duty to preserve and conserve, which consists of communicating with stakeholders, such as
11  politicians, industry leaders, consumer groups, government agencies, and trade associations. *See* Ex.
12  16; Ex. 17. Mr. Pollard even testifies before local legislatures to answer questions about and
13  articulate FHFA's positions regarding preservation and conservation. *Id.* **Exhibit 19**, Statement of
14  Alfred M. Pollard, dated Nov. 30, 2009; **Exhibit 20**, Correspondence, dated Sept. 10, 2009 (Letter
15  sent to Fannie Mae's general counsel on behalf of the conservatorship citing § 4617 and directing
16  Fannie Mae to perform specific risk-avoidance measures). After evaluating threats to the
17  conservatorship, offering advice, and disseminating the conservator's position, Mr. Pollard helps
18  FHFA act to preserve and conserve Freddie Mac's assets. *See* Mot. at Ex. A; Ex. 17 at p. 8, ¶ 20.

19  In the instant matter, Mr. Pollard has knowledge about whether FHFA consents to
20  association non-judicial foreclosures by stating in this matter "[a]t no time did FHFA, as
21  Conservator, consent to Freddie Mac's interest in the property being extinguished by the HOA
22  Sale[.]" Mot. at Ex. A, ¶ 4. Indeed, he declares that permitting such consent, "would violate
23  FHFA's statutory mandate as Conservator to preserve and conserve Freddie Mac's assets." *Id*. at ¶ 4.
24  All told, when FHFA refused to "consent" to the Association Foreclosure Sale and to Plaintiff's
25  property rights, it did so with Mr. Pollard's overt and significant assistance.

26  The same holds for FHFA's Director, Melvin L. Watt who, along with Mr. Pollard, provides
27  overt and significant assistance to the conservator's preservation and conservation activities. *See*
28  **Exhibit 21**, Decl. of Melvin Watt. As Director, Mr. Watt makes policy decisions on FHFA's behalf,

"which frequently concern how the conservatorships should proceed on a wide variety of fronts[.]" *Id.* at p. 2, ¶ 4. In Mr. Watt's estimation, Congress gave the conservator "unfettered ability" to develop and implement policy solutions (*Id.* at p. 5, ¶ 11), which may explain why "Agency personnel be able to execute the critical missions of the conservatorships insulated from interference by outside parties." *See* **Exhibit 22**, Decl. of Christopher Dickerson at. ¶ 6.  Either way, when the conservator develops, implements, and alters policy, Mr. Watt is overtly and significantly involved. *See* Ex. 21. For example, he changes conservator policies (*Id.* at p. 6, ¶13), delegates authority to Mr. Pollard (Ex. 22 at p. A30), and deliberates with other FHFA government officials about topics related to preservation and conservation (Ex. 21 at p. 2, ¶4). In short, Mr. Watt "[d]irect[s] the operations of the conservatorships in the manner I believe to be in the best interests of the conservatorships and the Agency." *Id.* at p. 6, ¶ 13. Such operations include preserving and conserving assets, the very issue permeating this matter and, according to FHFA, animating 4617(j)(3). *Id.* at p. 6, ¶ 14.

At the very least, FHFA is a government actor because government officials (Mr. Pollard and Mr. Watt) provided it with overt and significant assistance in invoking § 4617(j)(3) and refusing to "consent" to Plaintiff's property interests or the Association Foreclosure Sale.

### 2.   <u>Plaintiff's Property Interests</u>

As a government action is involved in this matter, the next requirement to implicate due process is the existence of a property interest. Property interests are not created by the constitution, but rather "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Indeed it has been recognized that the "right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53-54 (1993). Additional interests are the right to unrestricted use and enjoyment, receive rents, encumber, and transfer. *Id.*

Moreover, Nevada has specifically recognized that the bundle of property rights includes "'all rights inherent in ownership, including the inalienable right to possess, use, and enjoy the

12

property,'" as well as security in and title to the property." *Hamm v. Arrowcreek Homeowners' Ass'n*, 124 Nev. 290, 298, 183 P.3d 895, 902 (Nev. 2008) (quoting *McCarran Int'l Airport v. Sisolak,* 122 Nev. 645, 657, 137 P.3d 1110, 1119 (Nev. 2006); *see also* Nev. Const. art. 1, § 1 (granting the inalienable constitutional right to "[p]rotect[ ]" property).  The Nevada Legislature has also codified the State's interests in those rights under NRS 111.860, which provides that"[t[he public policy of this State favors the marketability of real property and the transferability of interests in real property free of defects in title or unreasonable restraints on the alienation of real property." NRS 111.860(1).

Here, it is undisputed that Plaintiff purchased the Property at the Association Foreclosure Sale and received its Deed, which was recorded on November 27, 2012.  *See* Ex. 8; *see also* Mot. at pp. 4-5, ¶¶ 4-5.  Through this acquisition, and as recognized by Nevada law, Plaintiff possessed title to the Property and claimed the right to possess, use, enjoy, receive rents, encumber, and transfer the Property.

### 3.     **Defendants Have Deprived Plaintiff of Its Property**

The next component of due process requires the deprivation of property by the government. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Deprivation occurs when the government significantly alters or eliminates rights recognized by state law.  *See Paul v. Davis*, 424 U.S. 693, 710-11 (1976); *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

Here, Defendants aver that Section 4617(j)(3), coupled with FHFA's refusal to give "consent" under that statute, significantly altered and nullified Plaintiff's property rights.Pursuant to the Nevada Supreme Court, NRS 116.3116(2) gives an association a true super-priority lien, proper foreclosure of which will extinguish a first deed of trust. *SFR Investments Pool 1 v. U.S. Bank,* 130 Nev. ___, 334 P.3d 408, 419 (2014), *reh'g denied* (Oct. 16, 2014).  Therefore, as the Deed of Trust was junior to the Association Lien at the time of the Association Foreclosure Sale, foreclosure of the Association Lien extinguished any security interests held in the Property pursuant to said Deed of Trust and Plaintiff purchased free and clear.

However, because FHFA did not "consent" to the Association's Foreclosure Sale or Plaintiff's property rights, 4617(j)(3) avowedly prohibited the extinguishment of the Deed of Trust, a considerable alteration and elimination of Plaintiff's rights.  Accordingly, by Defendants'

1  interpretation, instead of having superior title – a right recognized by Nevada law – Plaintiff
2  purportedly had only an interest in the Property inferior to Defendants.  Therefore, Plaintiff lost the
3  Property by foreclosure of the Deed of Trust and sale to FreddieMac, all because of 4617(j)(3) and
4  FHFA's refusal to "consent."  Such action is by definition, a deprivation of property rights.

### 4. **Defendants Deprived Plaintiff of its Property Without Due Process of Law**

Due process' last element requires a deprivation to have occurred without due process of law. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  Thus, this factor focuses on the constitutional sufficiency of procedures, often described as "notice and an opportunity to be heard." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  To be constitutionally adequate, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*

More precisely, when a statute is challenged on due process grounds, a court determines whether that law's procedures comport with due process. *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 195 (2001).  Thus, the Supreme Court has acknowledged that notice of the right to a hearing can be provided by "published, generally available state statutes and case law," "public sources," "any publicly available document," and "documents accessible to the public." *City of W. Covina v. Perkins*, 525 U.S. 234, 241, 242 (1999).

Here, 4617(j)(3) is bereft of any procedures. Though it speaks of FHFA's "consent," 4617(j)(3) lacks a process to obtain "consent." 12 U.S.C. § 4617(j)(3).  Similarly, there is no procedure for challenging FHFA's refusal to "consent." *Id.*  The law simply states "[n]o property of the Agency shall be subject to . . . foreclosure, or sale without the consent of the Agency[.]" *Id.*  Yet, due process' "root requirement" is "an individual be given an opportunity for a hearing before he is deprived of any significant protected interest[.]" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (emphasis in original and internal citation omitted).

14

In this case, FHFA did not give Plaintiff an opportunity for a hearing before FHFA deprived Plaintiff of its protected property interests; "consent" to these rights was simply denied. To make matters worse, 4617(j)(3) does not give Plaintiff a post-deprivation remedy. No process exists for Plaintiff to contest FHFA's refusal to "consent," the agency's significant alteration and negation of Plaintiff's property rights. To the contrary, FHFA believes 4617(f) insulates its actions as conservator from judicial review. Mot. at p. 12, fn 5 ("FHFA's decision not to consent to the extinguishment of Freddie Mac's interest in the HOA sale may not be reviewed by this court.").

The absence of pre-deprivation procedures coupled with the lack of a post-deprivation remedy clearly establishes that FHFA has deprived Plaintiff of its property rights without due process of law. *Zinermon*, 494 U.S. at 132, 139. Here, no procedures for obtaining FHFA's "consent" are publicly available. Thus, due process requires FHFA to provide actual notice of procedures for protecting one's interests. *Perkins*, 525 U.S. at 242. As no such notice was given, due process was violated. *Id*. Ultimately, Defendants' arguments demonstrate that FHFA deprived Plaintiff of its property rights without due process of law, and therefore, its Motion must be denied.

**D.  DEFENDANTS USE 4617(J)(3) BEYOND FHFA'S STATUTORY POWERS**

The Ninth Circuit has determined FHFA's powers, which acting as conservator, are "broad, but not infinite." *Cnty. of Sonoma v. Fed. Hous. Fin. Agency*, 710 F.3d 987, 994 (9th Cir. 2013). One limiting principle is the conservator cannot act "[b]eyond, or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions." *Id*. at 992 (quoting *Sharpe v. FDIC*, 126 F.3d 1147, 1155 (9th Cir. 1997)). Therefore, FHFA's aforementioned due process deprivation demonstrates that FHFA has acted beyond its constitutionally permitted powers.

Particularly, FHFA's invocation of 4617(j)(3) is premised on its power to "[t]ake such action as may be . . . appropriate to . . . preserve and conserve the assets and property of [Freddie Mac]." 12 U.S.C. § 4617(b)(2)(D)(ii) (emphasis added); *see also* Mot. at Ex. A, ¶ 4 (denial of "consent" to HOA sale due to conservator's duty to preserve and conserve). To be "appropriate," FHFA's actions cannot be inconsistent with the Director's principal duties, one of which "[s]hall be . . . to ensure that . . . [Freddie Mac] complies with . . . guidelines . . . issued under this chapter and the authorizing statutes." 12 U.S.C. § 4513(a)(1)(B)(iii).

15

Notably, in August 2013, Freddie Mac issued an announcement to its servicers, requiring payment of association assessments "prior to the foreclosure sale date if they are, or may become, a First Lien priority on the Mortgaged Premises or that if not paid, would result in the subordination of Freddie Mac's interest in the Mortgaged Premises." *See* **Exhibit 23**, Freddie Mac Bulletin (August 15, 2013), at p. 7. And, more recently, Freddie Mac issued an announcement specifically addressing the SFR Investments decision:

> The Supreme Court of the State of Nevada recently held that foreclosure by an HOA on its lien for delinquent assessments extinguished the existing Mortgage on the property. In light of this ruling, we are reminding Servicers that pursuant to Section 66.22, *Expenses that May Become First Liens on the Property*, Servicers must take steps to ensure that our Mortgage is not adversely affected, including but not limited to, paying any condominium, HOA and PUD regular assessments that are, or may become, superior to our lien and pose a risk to our interest in the Mortgaged Premises if left unpaid.
>
> Accordingly, it is important for Servicers to continue to have adequate procedures and processes in place to ensure that they are notified by the HOA of any activities that affect, or could affect, Freddie Mac's interest in the Mortgaged Premises.

**Exhibit 24**, Freddie Mac Bulletin (Nov. 17, 2014), at p. 3.

Despite these "guidelines," Defendants contend that FHFA's refusal to "consent" means that the Deed of Trust had priority over Plaintiff's interests in the Property and over the Association Lien. But this is directly at odds with Freddie Mac's servicing guidelines and inconsistent with the Director's "principal duty" to ensure compliance with Freddie Mac's "guidelines." 12 U.S.C. § 4513(a)(1)(B)(iii). Such inconsistency illustrates FHFA's invocation of 4617(j)(3) is not an "appropriate" action to "preserve and conserve" Freddie Mac's assets. As a result, FHFA has acted beyond its statutory powers, making its claims implausible.

E. **SECTION 4617(J)(3) IS INAPPLICABLE TO PRIVATE ENTITIES**

According to Defendants, § 4617(j)(3) is patterned after 12 U.S.C. § 1825(b)(2), a statute involving the "consent" of the FDIC in a receivership position. *See* Mot. at p. 12 ("Section 4617(j)(3) of HERA operates in the same fashion as Section 1825(b)(2) would to preclude the November 16, 2012 HOA Sale from extinguishing Freddie Mac's property interest."). Thus, based on this lineage, Defendants use § 1825(b)(2)'s interpretive precedent to construe 4617(j)(3). *See e.g.*

16

Mot. at pp. 11-12 (citing holdings of courts interpreting § 1825(b)(2) for the conclusion that § 4617(j)(3) preempts state law).

However, such an approach reveals that § 4617(j)(3) is not as expansive as Defendants suggest. Specifically, in *F.D.I.C. v. McFarland*, the Fifth Circuit held that § 1825(b)(2) prohibits only state and local taxing authorities from foreclosing on property subject to an FDIC lien without its consent. 243 F.3d 876, 886 (5th Cir. 2001). As § 1825(b)(2) "represents the express will of Congress that the FDIC must consent to any deprivation of property *initiated by a state*" (*Id.* (quoting *F.D.I.C. v. Lee*, 130 F.3d 1139, 1143 (5th Cir. 1997) (emphasis in original)), the Fifth Circuit "has not applied the exemption of section 1825(b)(2) to liens not attached by state and local taxing authorities." *Id*. Therefore, the court held that two private entities, a bank and an individual creditor, had valid liens that were senior to the FDIC's interests.

Here, under Defendants' own interpretive approach, this limitation should constrain § 4617(j)(3) to state and local taxing authorities. The Association and Plaintiff are private entities, thus § 4617(j)(3) is inapplicable to the matter at hand.

**F.    THE ASSOCIATION LIEN ATTACHED BEFORE FHFA'S CONSERVATORSHIP**

Similarly, the Ninth Circuit interpreted § 1825(b)(2) as not extinguishing liens that attached before the FDIC's receivership. In *In re Cnty. of Orange*, the Ninth Circuit noted that because § 1825(b)(2) provides that "nor shall any involuntary lien attach *to the property of the Corporation*", the statute does not "provide for extinguishing liens that attached when the property was not the FDIC's. Under the plain terms of the statute's subsections, the FDIC is not exempt from liens that attached before the subject real property became 'the property of the Corporation.'" 262 F.3d 1014, 1019-20 (9th Cir. 2001) (emphasis in original).

Likewise, § 4617(j)(3) states that "[n]o property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the Agency." (emphasis added). Thus, within the 4617(j)(3) context, and pursuant to FHFA's own interpretive approach, this means that if a lien attached before FHFA's conservatorship, then FHFA cannot avoid that lien. Here, Association's lien attached when its CC&Rs were recorded, May 18, 2004. *See* Ex. 1; *see also* NRS 116.3116(5)

17

("Recording of the declaration constitutes record notice and perfection of the lien"); *SFR investments*, 334 P.3d at 418 (quoting *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A.*, 979 F.Supp.2d 1142, 1152 (D. Nev. 2013) (Chapter 116 and recorded CC&Rs placed banks on notice of association's lien priority)).

Contrastingly, FHFA became Freddie Mac's conservator on September 6, 2008. Mot. at p.4, ¶ 3. Therefore, FHFA cannot avoid the Association Lien because that lien attached when the property was not FHFA's. As such, § 4617(j)(3) has no applicability in this matter and Defendants' Motion must be denied.

## IV.     CONCLUSION

Based on the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment in its entirety.

DATED this 23rd day of March, 2015.

Respectfully submitted,

**MAIER GUTIERREZ AYON**

   /s/ Margaret E. Schmidt          
LUIS AYON, ESQ.
Nevada Bar No. 9752
MARGARET E. SCHMIDT, ESQ.
Nevada Bar No. 12489
400 South Seventh Street, Suite 400
Las Vegas, Nevada 89101
*Attorneys for Plaintiff/Counter-Defendant Vern Elmer*

**CERTIFICATE OF SERVICE**

I hereby certify that service of **VERN ELMER'S OPPOSITION TO FREDDIE MAC AND FHFA'S MOTION FOR SUMMARY JUDGMENT** was made on this 23rd day of March, 2015, via the Court's CM/ECF system to all parties and counsel as identified on the Court-generated Notice of Electronic Filing:

| | |
|---|---|
| Abran E. Vigil | vigila@ballardspahr.com |
| Neal Gidvani | ngidvani@silgid.com |
| Phillip Silvestri | psilvestri@silgid.com |
| Richard Reynolds | rreynolds@bwslaw.com |
| Leslie Bryan Hart | lhart@lionelsawyer.com |
| John D. Tennert | jtennert@fclaw.com |
| Asim Varma | Asim_Varma@aporter.com |
| Howard Cayne | Howard.Cayne@aporter.com |
| Michael Johnson | michael.johnson@aporter.com |
| Sean L. Anderson | sanderson@leachjohnson.com |
| Ryan D. Hastings | rhastings@leachjohnson.com |

*/s/ Charity Barber*
An Employee of MAIER GUTIERREZ AYON